Holbrook, Jr.,
P.J. Plaintiff appeals as of right from an order denying her motion for summary disposition and granting defendant summary disposition pursuant to MCR 2.116(I)(1).[1] Plaintiff’s motion for summary disposition argued that Detroit Ordinances 2-91, ch 9, *698 art 16 and 3-91, ch 9, art 16 were invalid because (1) they were not properly published and (2) they authorized searches without warrants in violation of the Fourth Amendment. In a written opinion, the trial court denied plaintiffs motion and found that defendant was entitled to judgment as a matter of law. We reverse and remand.
Plaintiff argues that the trial court erred in determining that defendant had legally adopted and published the ordinances. In Ordinance 2-91, defendant adopted the BOCA National Property Maintenance Code/1990 (hereinafter BOCA maintenance code)[2] by reference without publishing it in its entirety. Ordinance 3-91 provided in part for inspections of buildings for compliance with the BOCA maintenance code. Whether the ordinances were properly adopted and published is a question of law that is reviewed de novo on appeal. Brucker v McKinlay Transport, Inc (On Remand), 225 Mich App 442, 448; 571 NW2d 548 (1997).
Defendant based the legality of its adoption by reference of the BOCA maintenance code on MCL 117.3(k); MSA 5.2073(k):
Section 117.3(k) of the Michigan Compiled Laws, as amended, provides that each city shall have power, whether so provided in its charter or not, to adopt by reference in an Ordinance any model code which has been promulgated by an organization or association which is organized and conducted for the purpose of developing any such code. [Ordinance 2-91, § 9-16-5 (emphasis added).]
*699 We conclude that defendant’s reliance on MCL 117.3(k); MSA 5.2073(k) was based on an erroneous reading of the statute. MCL 117.3(k); MSA 5.2073(k) reads in pertinent part:
Whether or not provided in its charter, a city may adopt a ... code ... that [has] been promulgated and adopted by an authorized agency of the state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code; boiler operation code, elevator machinery code, or a code pertaining to flammable liquids and gases, as well as to hazardous chemicals, that has been promulgated by this state, by a department, board, or other agency of this state or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the code in an adopting ordinance and without publishing the code in full.
“Statutory interpretation is a question of law reviewed de novo on appeal.” People v Williams, 226 Mich App 568, 570; 576 NW2d 390 (1997). “The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent.” People v Parker, 230 Mich App 677, 685; 584 NW2d 753 (1998).
MCL 117.3(k); MSA 5.2073(k) includes two separate lists of specific code subjects that can be adopted by reference. The authorized sources for these codes are also clearly spelled out. The subjects included in the first list can be adopted by reference to a code that has “been promulgated and adopted by an authorized agency of the state.” The types of codes included are those “pertaining to fire, fire hazards, fire prevention, or fire waste.” The second list permits adoption by reference to certain specific types of codes “promulgated by this state, by a department, board, or other *700 agency of this state or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the code in an adopting ordinance and without publishing the code in full. ” (Emphasis added.) The types of codes authorized in the second list are: “a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, or a code pertaining to flammable liquids and gases, as well as to hazardous chemicals.”
The second list does not include any language indicating that the fist is not exhaustive. For example, the second list is not modified either by the phrase, “includes, but is not limited to,” or by a specific inclusive reference to “any other codes” that may have been promulgated by the listed entities. See MCL 66.4; MSA 5.1274 (“A village may adopt a plumbing code, electrical code, mechanical code, fire protection code, building code, or other code . . . .”). Accordingly, given that the second list does not include property maintenance codes, we conclude that defendant’s reliance on MCL 117.3(k); MSA 5.2073(k) was misplaced. See United States Fidelity & Guaranty Co v Amerisure Ins Co, 195 Mich App 1, 5-6; 489 NW2d 115 (1992) (observing “that the express mention of one thing in a statute implies the exclusion of other similar things”). See also OAG, 1977-1978, No 5280, p 394 (March 23, 1978).
We now turn to the question whether defendant’s adoption of the BOCA maintenance code by reference was nonetheless justified even though it was not sanctioned by MCL 117.3(k); MSA 5.2073(k). In L A *701 Thompson Scenic R Co v McCabe, 211 Mich 133; 178 NW 662 (1920), our Supreme Court examined the legislative forerunner to Detroit Charter, § 4-114(1), ¶ 2. The question at issue was whether a building code that had been “ ‘ “approved by the commissioner of buildings and safety engineering” ’ ” and deposited “ ‘ “in the custody of the city clerk,” ’ ” could be adopted by reference in an ordinance passed by the Detroit common council. Id. at 136 (quoting the circuit court, which in turn was quoting from the ordinance at issue). The Thompson Court indicated that adoption of such a code by reference was a legitimate procedure provided that the code was already a public record. Id. at 138. The Thompson Court concluded that the building code at issue could not be characterized as a public record because it had not been “enacted into legislation or ordained by the common council, nor had it received the approval of the mayor or become operative without such approval.” Id. Mere filing of the code with the city clerk did not by itself make it a matter of public record. Id.
The legitimacy of adoption by reference to a public record was also approved in Village of Durand v Love, 254 Mich 538, 540; 236 NW 855 (1931): “An ordinance sometimes may refer to a public record already established by lawful authority and become effective without publication of such record as part of the ordinance.” However, the Durand Court specifically observed that “[a]n ordinance cannot at the same time establish a paper as a public record and also incorporate it by reference as a previously established public record.” Id. at 540-541.
Here, there is no evidence that the BOCA maintenance code was made a part of the public record *702 before it was adopted by reference in Ordinance 2-91. Mere filing of the BOCA maintenance code with the city clerk was not enough to make it a public record. Thompson, supra at 138. Nor was the BOCA maintenance code transformed into a public record by the very ordinance that adopted it by reference. Durand, supra at 540-541.
Defendant argues that Thompson should not control our resolution given that the case was based in part on the following language found in 1915 Detroit Charter, tit 3, ch 1, § 17: “No ordinance shall be revised, altered or amended by reference to its title only, but the section or sections of the ordinance altered or amended shall be re-enacted and published at length.” The parties agree that this provision was revised by § 4-114(1), ¶ 2, which provides: “Any ordinance which repeals or amends an existing ordinance or part of the city Code shall set out in full the ordinance, sections, or subsections to be repealed or amended, and shall clearly indicate matter to be omitted and new matter to be added.” Defendant asserts that the revised language found in § 4-114(1), ¶ 2 signals that the restrictions placed by the Thompson Court on adoption by reference have been relaxed. We disagree.
“The prevailing rules regarding statutory construction . . . extend to the construction of home rule charters.” Detroit v Walker, 445 Mich 682, 691; 520 NW2d 135 (1994). “When the language of a charter provision is unambiguous and specific it is controlling. . . . If a charter provision is ambiguous it must still be interpreted in a manner consistent with reason and with the goal of determining the purpose and intent of the framers and public.” Detroit Fire Fighters *703 Ass'n v Detroit, 127 Mich App 673, 677; 339 NW2d 230 (1983). We believe that the language of § 4-114(1), ¶ 2 is ambiguous, and we therefore turn to the rules of statutory construction for guidance.
While changes in statutory language can signal a change in meaning, they can also “reflect an attempt to clarify the meaning of a provision rather than change it.” Meyer Jewelry Co v Johnson, 229 Mich App 177, 183; 581 NW2d 734 (1998). See also Indenbaum v Bd of Medicine (After Remand), 213 Mich App 263, 282; 539 NW2d 574 (1995) (“When interpreting a statute, a court must not confuse style with substance.”). We believe that the question whether the language of § 4-114(1), ¶ 2 reflects a change in meaning or a change in style is answered by the official approved commentary to the section. The commentary observes that “[s]ubsection (1) is a revision of provisions contained in section 17 of title 3, chapter 1 of the present charter and makes no substantial changes” (emphasis supplied). We find this explanation for the changes in the language of the ordinance to be of great importance because “when ambiguity exists, courts are to give effect to [legislative intent].” Gebhardt v O’Rourke, 444 Mich 535, 543; 510 NW2d 900 (1994). Further, the Michigan Supreme Court appears to have previously sanctioned the use of official commentary to the Detroit Charter as an interpretative aid by rejecting certain arguments regarding interpretation of that charter “because [those arguments] ignore the language of the city charter and its instructive commentaries.” Detroit v Walker, 445 Mich 682, 695; 520 NW2d 135 (1994) (emphasis supplied). We consider a change in procedure that would allow for adoption of a code by refer *704 ence even though it is not a part of the public record to be a substantial change. Therefore, given that parts of the BOCA maintenance code provide for fines and even imprisonment for violations thereof, we believe that the limitations identified in Thompson on defendant’s power to adopt ordinances that have the effect of a penal statute are implicated by § 4-114(1). See Thompson, supra at 139.[3]
Accordingly, we conclude that even though § 4-114(1), ¶ 2 no longer specifically uses the phrase “amended by reference,” defendant must still abide by the limitations on the process of adoption by reference that predated its enactment. Therefore, because the procedure followed in adopting the BOCA maintenance code by reference was neither authorized by MCL 117.3(k); MSA 5.2073(k) nor in keeping with the limitations inherent in § 4-114(1), ¶ 2, we hold that the boca maintenance code was not properly adopted.[4] Thus, we conclude that Ordinances 2-91 and 3-91 are invalid.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
*705 Whttbeck, J., concurred.

 MCR 2.116(1) (1) reads: “If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."

 Boca is an acronym for Building Officials & Code Administrators International, Inc. The boca maintenance code is not the same as the boca building code, versions of which have been promulgated by the state.

 At heart, our decision rests on the decision of the Michigan Supreme Court in Thompson, supra. It may be questionable whether Thompson correctly interpreted the pertinent provisions of the predecessor Detroit Charter at issue in that case. In any event, it is clear that, in adopting the corresponding charter provisions applicable to this case, there was no intent by the drafters or the people of Detroit to work a substantive change. Thus, the holding of Thompson remains in force despite the technical changes in the language of the charter. As an intermediate appellate court, this Court remains bound by the Michigan Supreme Court’s decision in Thompson.

 Because plaintiff’s first issue is dispositive, we need not address the constitutional issues raised. Detroit v Sledge, 223 Mich App 43, 47; 565 NW2d 690 (1997).